UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SAGAX DEVELOPMENT CORP.,                    :

                     Plaintiff,                    :

          -against-                        :        **MEMORANDUM AND ORDER**

ITrust S.A.,                                    :        19-CV-3386 (RA) (KNF)

               Defendant.        :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## BACKGROUND

Plaintiff Sagax Development Corp.'s ("Sagax") commenced this action for breach of contract alleging that defendant ITrust S.A. ("ITrust") breached "its agreement with Sagax dated October 9, 2015 (the 'Agreement'), to grant Sagax a 2.5% equity interest in ITrust in exchange for over a year of Sagax's hard work serving as an advisor to ITrust and its' efforts to secure investors and investments in ITrust's growing business."  By a joint letter dated April 5, 2021, Docket Entry No. 73, the parties sought a pre-motion conference to address the plaintiff's request to compel the defendant to comply with the plaintiff's discovery requests outstanding since July 26, 2019, asserting that "fifteen months after Sagax served document requests and interrogatories, ITrust now asserts that, in accordance with French Law, it cannot respond to discovery requests until they have first been served through the Hague Convention."  The plaintiff argued, <u>inter alia</u>, that the defendant "waived any arguments relating to French law or the Hague Convention by failing to raise them until fifteen months after it was served with Sagax's initial discovery requests pursuant to Fed. R. Civ. P. 34."  The defendant argued:

> As a French company, ITrust is subject to French law, which prohibits the disclosure of evidence in foreign judicial proceedings unless that evidence has first

1

been requested through a formal diplomatic process such as the Hague Convention. Accordingly, the French Ministry of Justice issued a letter on November 18, 2020 ordering that ITrust comply with French law during discovery in this Action.

On April 20, 2021, the Court conducted a conference concerning the parties' dispute raised in the

April 5, 2021 letter and found the following:

> In light of the many opportunities that the defendants had and defendants' failure to raise the issue of the French law and the Hague Convention, and the defendants' failure to address the argument, the waiver argument and the legal authorities that the plaintiff outlined in the letter appearing at docket entry 73 -- and I found those authorities to be persuasive -- I believe that the defendants have waived the argument that the Hague Convention must be used for discovery in this action, and I am going to direct that the defendants respond to the discovery demands.  In the letter that appears at docket entry number 73, there was a proposed time frame for interrogatories and exchange of documents and depositions, stretching from April to early July 2021, and the defendants didn't object to the imposition of a discovery schedule as outlined there. So I am going to adopt that schedule and that will govern your pretrial discovery activities going forward.

> Docket Entry No. 76.

On April 21, 2021, the Court issued an order directing as follows:

> A telephonic conference was held with counsel to the respective parties on April 20, 2021. As a result of the discussion had during the conference, IT IS HEREBY ORDERED THAT: 1. interrogatories are to be served on or before April 23, 2021; 2. the answer to any interrogatories are to be served on or before May 24, 2021; 3. document discovery is to be completed on or before May 28, 2021; 4. depositions are to be completed on or before July 1, 2021; 5. any dispositive motion shall be filed on or before August 2, 2021. The response and any reply to such a motion shall be made in accordance with Local Civil Rule 6.1 of this court; and 6. if no dispositive motion is made, the parties shall submit their joint pretrial order to the court on or before August 2, 2021. That document must conform to the requirements for such an order that are found in the Individual Rules of Practice of the assigned district judge. Those are the matters that were addressed in the letter appearing at docket entry number 73.

> Docket Entry No. 75.

By a joint letter dated July 15, 2021, Docket Entry No. 78, the plaintiff requested leave to make a

motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, asserting that

ITrust is in willful violation of the Court's Order by refusing to respond substantively to Sagax's interrogatories. ITrust's June 22, 2021 response indicates that ITrust is aware that it raised these same objections during the April 20, 2021 Hearing and knows that the Court rejected them – yet ITrust still refuses to comply with the Court's Order. . . . Sagax requests entry of an order pursuant to Fed. R. Civ. P. Rule 37 directing ITrust to pay the reasonable expenses, including attorneys' fees, that Sagax has incurred in connection with ITrust's willful refusal to comply with the Court's orders and providing for further costs and sanctions as the Court deems just and proper.

The defendant asserted:

As a French company subject to French law, ITrust cannot proceed with foreign discovery outside of the Hague Convention without facing serious civil and criminal penalties at home. . . . ITrust has responded to Sagax's interrogatories to the best of its abilities, but to fully participate in this litigation would require revealing information that would put ITrust squarely in violation of French law and a direct order to ITrust from the French Ministry of Justice prohibiting such conduct. . . . ITrust's noncompliance, then, is not due to "willfulness, bad faith, or on any fault" of ITrust. Id. And ITrust can still fully participate in discovery that follows the Hague consent procedures. Therefore, ITrust continues to ask the Court to permit the Parties to proceed in a manner that would not expose ITrust to civil and criminal sanctions in France.

By a separate letter dated July 15, 2021, Docket Entry No. 79, the defendant asserted:

ITrust S.A. ("ITrust") writes to supplement the letter filed jointly with Sagax Development Corp. ("Sagax") on July 15, 2021 (ECF No. 78). ITrust attaches a copy of the November 16, 2020 letter from the French Ministry of Justice to ITrust, as well as a certified translation of the letter, for the Court's consideration. ITrust is aware that Rule 2 of Your Honor's Individual Rules of Practice does not allow attachments to "Letter-Motions concerning discovery disputes[.]" However, because of the severity of Sagax's request, seeking the entry of an order under Federal Rule of Civil Procedure 37, ITrust respectfully requests that the Court consider the attached letter.

The Court denied the parties' request for a pre-motion conference and scheduled the plaintiff's motion practice.  See Docket Entry No. 80.  Before the Court is the plaintiff's motion, opposed by the defendant, seeking an order

pursuant to Rule 37 of the Federal Rules of Civil Procedure, in the form of (1) directing ITrust to pay the reasonable expenses, including attorneys' fees, that Sagax has incurred in connection with ITrust's willful refusal to comply with the

Court's orders; (2) drawing an adverse inference against ITrust as to deem the following facts as established for purposes of this action: (i) the parties entered into an enforceable agreement whereby ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax securing investments into those entities; (ii) Sagax performed under the agreement and secured $2 million in investments for ITrust and/or its subsidiary; (iii) ITrust is required to compensate Sagax under the Agreement; (iv) ITrust failed to compensate Sagax under the Agreement; and (v) ITrust owes Sagax an amount equal to 2.5%, which is, at a minimum, $499,221.00, plus statutory interest and costs; and (3) providing for such other costs and sanctions as the Court deems just and proper.

## PLAINTIFF'S CONTENTIONS

The plaintiff asserts that the defendant "is in willful violation of the Court's April 21, 2021 Order" directing the plaintiff to serve its interrogatories and the defendant to serve its answers, after finding at the April 20, 2021 conference that the defendant waived its argument that the Hague Convention must be used for discovery in this action by failing to raise it despite many opportunities to do so. The defendant refused to comply with the April 21, 2021 order, asserting the same objections concerning the Hague Convention already rejected by the Court. The plaintiff contends that the defendant's delay, including failure to obtain counsel as directed by the Court, obstruction and willful violation of the Court's April 20, 2021 ruling and the April 21, 2021 order made it impossible to prosecute this action and caused the plaintiff to incur over $67,000 in costs and expenses, including attorney's fees since it served its discovery requests in July 2019. The plaintiff asserts it incurred "(i) $34,559.00 in pursuing its motion for a default judgment, brought as a result of, among other things, ITrust's failure to obtain counsel as directed by the Court, and (ii) at least $32,603.75 through July of 2021 in litigating this dispute based on ITrust's refusal to participate in discovery and comply with the Court's April 20, 2021 ruling at the Hearing and its April 21, 2021 Order." Since commencing the action in April 2019, the plaintiff has been unable to obtain any substantive discovery and has been denied critical evidence necessary for its case, namely, "(i) whether the parties entered into an agreement

4

whereby ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange

for Sagax securing investments into those entities; (ii) whether Sagax performed under that

agreement and secured $2 million in investments for ITrust and/or its subsidiary; and (iii)

whether ITrust failed to compensate Sagax as obligated under the modified Agreement."  The

defendant failed to provide any legitimate excuse or defense, and the defendant and its counsel

knew that the defendant is required to comply with the court order and to participate in

discovery.  According to the plaintiff, severe sanctions are warranted, including costs and

expenses and "the Court should draw an adverse inference against ITrust as to deem the

following facts as established for purposes of this action":

> (i) the parties entered into an enforceable agreement whereby ITrust promised
> Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax
> securing investments into those entities; (ii) Sagax performed under the agreement
> and secured $2 million in investments for ITrust and/or its subsidiary; (iii) ITrust is
> required to compensate Sagax under the Agreement; (iv) ITrust failed to
> compensate Sagax under the Agreement; and (v) ITrust owes Sagax an amount
> equal to 2.5%, which is, at a minimum, $499,221.00, plus statutory interest and
> costs.

In support of the motion the plaintiff submitted a declaration by its attorney with Exhibit 1

("Sagax's First Set of Requests for Production of Documents served on ITrust on July 26,

2019"), Exhibit 2 ("Sagax's December 21, 2020 letter to ITrust"), Exhibit 3 ("ITrust's January

11, 2021 letter to Sagax"), Exhibit 4 ("Sagax's February 26, 2021 letter to ITrust"), Exhibit 5

(the transcript of the April 20, 2021 proceeding "in connection with the parties' discovery

dispute regarding ITrust's objections to Sagax's discovery requests"), Exhibit 6 ("the Court's

Order entered on April 21, 2021 (the 'Order') based on the Court's ruling at the Hearing held on

April 20, 2021"), Exhibit 7 ("Sagax's First Set of Interrogatories served on ITrust on April 23,

2021"), Exhibit 8 ("ITrust's Responses and Objections to Sagax's First Set of Interrogatories (the

'Responses and Objections') served on Sagax on June 15, 2021"), Exhibit 9 ("Sagax's June 16,

2021 letter to ITrust regarding the objections ITrust asserted in its Responses and Objections"),

and Exhibit 10 ("ITrust's June 22, 2021 letter to Sagax in response to Sagax's June 16, 2021

letter").

## DEFENDANT'S CONTENTIONS

The defendant contends:

As a French company, ITrust is subject to data privacy protection laws enacted and enforced by the French Republic and the European Union. The French Channeling Statute is one such law, prohibiting the disclosure of evidence in foreign judicial proceedings unless that evidence has first been requested through the formal procedures set out in the applicable international treaties or agreements to which France is a signatory. It is pursuant to this law that the French Ministry of Justice issued a letter to ITrust on November 16, 2020, ordering its compliance with the French Channeling Statute throughout the course of discovery in this litigation. Specifically, the Ministry has advised that neither ITrust nor any of its employees may participate in any form of collection or production of evidence, including documents and testimony, from ITrust or any other French company in a foreign proceeding, unless such discovery is carried out in accordance with certain diplomatic channels, including Hague Convention procedures. And as stated in the letter, "fail[ure]" to engage in discovery pursuant to the international channels "would constitute an infringement of the restrictions set in this way and would be punished by a 6-month term of imprisonment and a fine of 18,000 Euros, pursuant to article 3 of the aforementioned act." Bullock Decl. Ex. A. Additionally, as a French company, ITrust and its employees are required to adhere to French data privacy laws designed to ensure the privacy of personal data that may be collected during the course of discovery. . . . Finally, Sagax's contention that "ITrust's claim" about sanctions is "meritless" is, itself, baseless. Pl.'s Br. at 7. In a letter directed to ITrust, the French Ministry of Justice prohibited the company from responding to U.S. discovery requests outside of diplomatic channels; these prohibitions were made by threat of civil and criminal penalties.

The defendant contends that it is "unable to participate in one form of discovery due to the

serious risk of criminal and civil penalties at home."

The defendant maintains it did not abandon its defense of this litigation because it filed

its answer on August 12, 2019, made significant efforts to negotiate a settlement with the

plaintiff, served its interrogatories, and filed its responses to the plaintiff's interrogatories, none

of which justifies "Rule 37 case-ending sanctions." The defendant argues that "conducting

discovery through alternative procedures, such as the Hague Convention, would allow for this litigation to proceed without prejudice to Sagax." Moreover, imposing "case-ending sanctions" on it would not serve the purposes of Rule 37 because the defendant is bound by French law and cannot "benefit" from its failure to participate in discovery in this action, and its inability to participate in discovery is due to French law. In support of its opposition to the motion the defendant submitted its attorney Henninger S. Bullock's ("Bullock") declaration, stating:

> Henninger S. Bullock, pursuant to 28 U.S.C. § 1746, hereby declares: 1. I am a partner at the law firm Mayer Brown LLP, counsel for Defendant ITrust S.A. ("ITrust"). I make this declaration in support of ITrust's Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions. 2. Attached as Exhibit A is a true and correct copy of the French Ministry of Justice's letter to ITrust, dated November 16, 2020. Exhibit A is also accompanied by a certified translation of the letter into English. 3. Attached as Exhibit B is a true and correct copy of ITrust's March 9, 2021 letter to Sagax Development Corp.

### PLAINTIFF'S REPLY

The plaintiff contends that the Court has already determined that the defendant "'waived the argument that the Hague Convention must be used for discovery in this action' and was unpersuaded by ITrust's French law-based objections at the April 20, 2021 hearing." The plaintiff maintains that, in its opposition papers, the defendant ignored the Court's April 20, 2021 ruling and mentioned the April 21, 2021 order only in passing. The plaintiff asserts that the defendant is not entitled to re-litigate the merits of the dispute that the Court already decided, and this is not a motion for reconsideration. According to the plaintiff, "ITrust admits that it has failed to comply with the Court's Order, yet appears to argue that the Court has been wrong all along." The plaintiff contends that the defendant does not raise in its opposition any argument that the Court has not already heard and rejected at the April 20, 2021 hearing and in the resulting April 21, 2021 order. The plaintiff asserts that the defendant "continues to point to the

November 16, 2020 letter" it received from the French Ministry of Justice as "proof" that it

"cannot participate in any form of collection or production of evidence," except pursuant to the

Hague Convention, but fails to explain how it obtained this self-serving letter.  According tom

the plaintiff, if the defendant believed the Court overlooked the letter or otherwise erred in its

ruling it should have made a motion for reconsideration pursuant to Local Civil Rule 6.3 of this

court, but it did not.  The plaintiff contends that virtually all costs and expenses it incurred in this

action concern litigation of the defendant's refusal to participate in this action, including

expenses related to the plaintiff's motion for a judgment by default resulting from the

defendant's failure to obtain counsel as directed by the Court.  The plaintiff maintains that, apart

from repeating the same arguments based on French law that the Court already rejected when it

found that the defendant waived those arguments through its own conduct, the defendant

provided no valid excuse for failing to comply with the Court's order.  Furthermore, courts have

rejected the notion that a party in the defendant's position can opt out of Court-ordered discovery

by citing the risk of criminal and civil penalties associated with French law.  The plaintiff

contends that the defendant did not make any showing that it does not possess the documents

requested, and even absent waiver, a single letter form the French Ministry of Justice alone

cannot justify the defendant's violation of the Court's orders.

## LEGAL STANDARD

> If a party or a party's officer, director, or managing agent--or a witness designated
> under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit
> discovery, including an order under Rule 26(f), 35, or 37(a), the court where the
> action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken
> as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated
> claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

"Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." Daval Steel Prod. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991). "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed R. Civ. P. 37(b)(2)(C).

> In imposing Rule 37 sanctions, . . .  courts properly consider various factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non–compliant party had been warned of the consequences of noncompliance."

> Funk v. Belneftekhim, 861 F.3d 354, 366 (2d Cir. 2017) (citations omitted).

> Because the text of the rule requires only that the district court's orders be "just," however, and because the district court has "wide discretion in imposing sanctions under Rule 37," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted), these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion.

> S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).

> The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a controversy."  It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.

Daval Steel Prods., 951 F.2d at 1365 (citations omitted).

Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639 (1976) (per curiam); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). The harshest sanctions available are preclusion of evidence and dismissal of the action.

Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988).

[D]ismissal or default imposed pursuant to Rule 37 is a "drastic remedy" generally to be used only when the district judge has considered lesser alternatives.  .  .  . [D]ismissal or default is justified if the district court finds that the failure to comply with discovery orders was due to "willfulness, bad faith, or any fault" of the party sanctioned.  The district court is free to consider "the full record in the case in order to select the appropriate sanction."

S. New England Tel. Co., 624 F.3d at 144 (citations omitted).

"[A] district court's imposition of Rule 37 discovery sanctions" is discretionary.  Funk, 861 F.3d at 365.

## APPLICATION OF LEGAL STANDARD

### *Whether the Court Orders Were Clear and Unambiguous*

The defendant did not make any motion for reconsideration of the April 20, 2021 ruling and the April 21, 2021 order pursuant to Local Civil Rule 6.3 of this court or 28 U.S.C. § 636(b)(1)(A).  The defendant does not assert that the Court's April 20, 2021 ruling, and the April 21, 2021 order were unclear and ambiguous.  The Court finds that its April 20, 2021 ruling that the defendant "waived the argument that the Hague Convention must be used for discovery in this action" and the April 21, 2021 order directing the defendant respond to the plaintiff's discovery requests were clear and unambiguous.

10

***Whether the Defendant Failed to Comply with the Court's Discovery Orders***

The defendant does not assert that it complied with the Court's April 20, 2021 ruling and the April 21, 2021 order directing the defendant to respond to the plaintiff's discovery requests. The plaintiff's evidence establishes, and the Court finds that the defendant failed to comply with the Court's April 20, 2021 ruling and the April 21, 2021 order.

***The Willfulness of the Non-Compliant Party or the Reason for Noncompliance***

The defendant argues that "there is no 'willfulness,' 'bad faith' or 'fault' where a party cannot act" because "[a]s a French company, ITrust is subject to data privacy protection laws enacted and enforced by the French Republic and the European Union" and, "[i]n a letter directed to ITrust, the French Ministry of Justice prohibited the company from responding to U.S. discovery requests outside of diplomatic channels." No admissible evidence was submitted in opposition to this motion and no evidence exists in the record of this case establishing that: (1) the defendant is a "French company"; and (2) "[a]s a French company, ITrust is subject to data privacy protection laws enacted and enforced by the French Republic and the European Union." No admissible evidence of any "laws enacted and enforced by the French Republic and European Union" was submitted in support of the defendant's arguments in opposition to the motion. Bullock's declaration pursuant to 28 U.S. §1746 is deficient because it does not comply with the following requirements:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
> (Signature)".
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

28 U.S.C. §1746(2).

Not only did Bullock fail to make his declaration under penalty of perjury, assuming the declaration was executed in New York state, but he also failed to state that "the foregoing is true and correct."  Bullock did not state that his declaration is based on personal knowledge, and he does not claim he is employed by or associated with the French Ministry of Justice or "Transperfect," the logo of which appears at the page claiming to be a translation of "Exhibit A-ITrust-November 2020 Letter from French Ministry of Justic[]…," without identifying the date of the  November 2020 letter.  The defendant submitted no affidavits by the persons preparing the purported letter from the French Ministry of Justice and its purported translation, and Bullock has no personal knowledge of who prepared the letter or translation and whether those documents are what they purport to be.  The Court finds that the defendant's opposition is not supported by admissible evidence.

The defendant's counsel represented to the Court in the July 15, 2021 joint letter, Docket Entry No. 78, that the defendant received "an order from the French Ministry of Justice on November 16, 2020, which prohibited it from participating in any foreign proceeding—by threat of civil and criminal sanctions—unless such discovery is carried out in accordance with diplomatic channels," while representing in its separate letter on the same date, Docket Entry No. 79, that the document in question is "the November 16, 2020 letter from the French Ministry of Justice to ITrust, as well as a certified translation of the letter, for the Court's consideration." The Court finds that defendant's July 15, 2021 representation that it received an order from the French Ministry of Justice "on November 16, 2020," while knowing and admitting that "the November 16, 2020" document is a letter, not an order, from the French Ministry of Justice, was made in bad faith.  The defendant repeated the same conduct in opposition to the instant motion

12

by asserting that: (a) "the French Ministry of Justice issued a letter to ITrust on November 16, 2020, ordering its compliance with the French Channeling Statute throughout the course of discovery in this litigation," without pointing to any part of the purported letter ordering the defendant to do anything; and (b) "[i]n a letter directed to ITrust, the French Ministry of Justice prohibited the company from responding to U.S. discovery requests outside of diplomatic channel," without pointing to any part of the purported letter prohibiting the defendant from doing anything.  Notwithstanding the fact that the purported letter from the French Ministry of Justice and its purported translation do not constitute admissible evidence, the Court has reviewed them.  Assuming that the purported: (i) "18/11/2020" letter from the French Ministry of Justice is what it purports to be; and (ii) the translation of the "November 2020 Letter from the French Ministry of Justic[] . . ." is a  translation of the purported "18/11/2020" letter from the French Ministry of Justice, the translated document contains the following text:

> Sir,
> You have drawn the attention of my services to the enquiries that could be made in the framework of the proceedings before the United States District Court – Southern District of New York, to the company ITrust in order to obtain disclosure of information and intelligence in the field of application of the act of July 26, 1968 as amended by act No 80-538 of July 16, 1980. I have the honor of sharing with you the following observations, which I understand, could be used in the proceedings before the United States District Court – Southern District of New York.

The purported translation shows that the purported letter is signed as follows:

> Tania Jewczuk
> [signature]
> Head of Office for EU law, private international law
> and mutual assistance in civil matters

No evidence is submitted by the defendant to indicate that the French Ministry of Justice is a governmental body that has power to order the defendant to act or to prohibit the defendant from

acting, and the purported letter appears to indicate that it contains "observations" the author had "the honor of sharing" with "Sir," without identifying to whom the letter is directed.

The Court finds that representing to the Court in opposition to the instant motion that the purported letter from the French Ministry of Justice ordered the defendant to act as well as prohibited the defendant from acting, without any evidence in support of such contentions, constitutes bad faith conduct.  The Court also finds that the defendant acted in bad faith when it: (a) failed to comply with the Court's April 20, 2021 ruling and the April 21, 2020 order; (b) reasserted the same arguments and objections to the plaintiff's discovery requests that the Court found the defendant waived in its April 20, 2021 ruling and the April 21, 2021 order directing the defendant to respond to the plaintiff's discovery requests; and (c) continued reasserting the same arguments and objections in opposition to the instant motion that the Court found the defendant waived in its April 20, 2021 ruling and the April 21, 2021 order directing the defendant to respond to the plaintiff's discovery requests.

Accordingly, the Court finds that the defendant's noncompliance with the April 20, 2021 ruling and the April 21, 2021 order was willful and made in bad faith.  Thus, this factor militates strongly in favor of imposing sanctions.

### The Duration of the Period of Noncompliance

The plaintiff raised the issue of the defendant's noncompliance with the April 20, 2021 ruling and the April 21, 2021 order in the joint letter dated July 15, 2021, and the instant motion was made on August 3, 2021.  Although the duration of the defendant's noncompliance with the Court's orders is approximately three months, the protracted nature of this litigation caused solely by the defendant's conduct, including its repeated failure to obtain counsel requiring an entry of default against the defendant and a subsequent motion for judgment by default, as well

as the defendant's persistence in making the same arguments and objections already rejected by the Court, convince the Court that, under the circumstances, this factor militates in favor of imposing sanctions.

**Whether the Non–Compliant Party Had Been Warned of the Consequences of Noncompliance**

The defendant had not been warned by the Court of the consequences of its noncompliance with the Court's orders. The defendant did not: (a) address this factor in its opposition to the motion; or (b) assert any prejudice from the lack of notice. Keeping in mind that no factor is dispositive, the Court finds that this factor, under the circumstances, does not militate in favor of or against imposing sanctions; thus, it is neutral.

**The Efficacy of Lesser Sanctions**

The defendant asserts that its "inability to participate in U.S. discovery is due to French law, which would prevent participation regardless of any sanctions imposed on ITrust." The defendant's persistence in pressing its argument rejected by the Court that discovery must proceed pursuant to the Hague Convention, as well as its admission that it will not participate in discovery "regardless of any sanctions imposed on ITrust," demonstrates that sanctions lesser than the harshest, except for reasonable attorney's fees, will be futile and are not warranted under the circumstances. The Court will consider the sanctions requested by the plaintiff.

> *Directing ITrust to Pay the Reasonable Expenses, Including Attorneys' Fees, that Sagax Has Incurred in Connection with ITrust's Willful Refusal to Comply with the Court's Orders*

Although the plaintiff asserts that it incurred "$34,559.00 in pursuing its motion for a default judgment," the plaintiff's instant motion for sanctions, as directed by the Court's July 16, 2021 order, Docket Entry No. 80, concerns solely the defendant's failure to comply with the Court's April 20, 2021 ruling and the April 21, 2021 order directing discovery, not the

defendant's other conduct in this litigation.  As discussed above, the Court finds that the defendant's failure to comply with the Court's April 20, 2021 ruling and the April 21, 2021 order was not substantially justified, and no other circumstances make an award of attorney's fees unjust.  Accordingly, the Court finds that awarding reasonable attorney's fees solely in connection with the defendant's failure to comply with the Court's April 20, 2021 ruling and April 21, 2021 order, incurred by the plaintiff after April 21, 2021, is warranted.  The plaintiff shall submit its reasonable attorney's fees application with a memorandum of law no longer than five double-spaced pages accompanied by evidence.  Any challenge to the reasonableness of the attorney's fees shall be no longer than five double-spaced pages and any reply no longer than three double-spaced pages.

*Drawing an Adverse Inference Against Itrust as to Deem the Following Facts as Established for Purposes of This Action: (I) the Parties Entered into an Enforceable Agreement Whereby Itrust Promised Sagax a 2.5% Equity Stake in Itrust and/or Its Subsidiary in Exchange for Sagax Securing Investments into Those Entities; (II) Sagax Performed under the Agreement and Secured $2 Million in Investments for Itrust and/or Its Subsidiary; (III) Itrust Is Required to Compensate Sagax under The Agreement; (IV) Itrust Failed To Compensate Sagax under the Agreement; and (V) Itrust Owes Sagax an Amount Equal to 2.5%, Which Is, at a Minimum, $499,221.00, Plus Statutory Interest and Costs*

[T]he words "adverse inference instruction" can be used to describe at least two different sorts of instructions.  One type of adverse inference instruction—the sort that was the subject of our *Residential Funding* opinion—is a sanction, or in other words, a punishment for misconduct. It is axiomatic that a court may not punish without finding misconduct that merits the punishment. Most commonly, such an instruction is given as a sanction with respect to misconduct that occurred outside the presence of the jury during the pretrial discovery proceedings, often consisting of a party's destruction of, or failure to produce, evidence properly demanded by the opposing party. Fed. R. Civ. P. 37 authorizes a wide range of sanctions for such discovery abuses. For example, if the district court in our case had determined (which it did not) that the Malis had photos of the second floor and wrongfully withheld them, it might simply have told the jury those facts and nothing more; or it might have added that the jury could, but need not, draw inferences against the Malis based on those facts; or, as requested in *Residential Funding,* that the jury *should* draw adverse inferences against the Malis based on those facts; or that

the jury should render a verdict for the Defendant. *See* Fed. R. Civ. P. 37(b)(2)(A). Before imposing any such sanction, the court would need to make findings that justified the sanction. A second, fundamentally different, adverse inference instruction is one that simply explains to the jury, as an example of the reasoning process known in law as circumstantial evidence, that a jury's finding of certain facts may (but need not) support a further finding that other facts are true. Such an instruction is not a punishment. It is simply an explanation to the jury of its fact-finding powers. Instructions of this nature are very common. An example that is routinely given is the instruction that, if the jury finds a witness has lied on one subject, it may (but need not) find on that basis that the witness has lied on other issues as well. The court need not find any facts to justify such an instruction, which leaves all the fact finding to the jury without encroachment by the court.

Mali v. Fed. Ins. Co., 720 F.3d 387, 392–93 (2d Cir. 2013).

"The elements of a cause of action to recover damages for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages (*see JP Morgan Chase v. J.H. Elec. of N.Y., Inc.,* 69 A.D.3d 802, 803, 893 N.Y.S.2d 237; *Furia v. Furia,* 116 A.D.2d 694, 695, 498 N.Y.S.2d 12)." Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (App. Div. 2d Dep't 2011).

The plaintiff asserts that "the Court should draw an adverse inference against ITrust as to deem the [designated] facts as established for purposes of this action." The plaintiff did not identify the adverse inference it seeks to be given to the jury. Although the plaintiff appears to seek sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i), namely, an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," and not a default judgment against the defendant pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), the facts the plaintiff seeks the Court to deem established are the facts required to satisfy each of the elements of the breach of contract cause of action. In effect, granting the relief requested, *i.e.,* deeming the facts designated by the

plaintiff established for the purpose of this action, would be tantamount to entering judgment against the defendant, including the amount of damages, and no adverse inference would be left for the jury to make or any other facts to be found, given that the statutory interest and costs would be determined by the Clerk of Court.  Based on the record and under the circumstances of this case and given that the defendant concedes that it will not participate in discovery "regardless of any sanctions imposed on ITrust," the Court finds that the harshest sanction against the defendant is appropriate and necessary to satisfy the purposes of Rule 37 sanctions: (i) it will ensure that the defendant will not benefit from its own failure to comply; (ii) it will serve as a specific deterrent to the defendant from continuing its disobedience of the Court's orders; and (iii) it will serve a general deterrent effect in this case and on other litigation. Accordingly, the Court deems the following facts established for the purposes of this action:

> (1) the parties entered into an enforceable agreement whereby ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax securing investments into those entities; (2) Sagax performed under the agreement and secured $2 million in investments for ITrust and/or its subsidiary; (3) ITrust is required to compensate Sagax under the Agreement; (4) ITrust failed to compensate Sagax under the Agreement; and (5) ITrust owes Sagax an amount equal to 2.5%, which is, at a minimum, $499,221.00, plus statutory interest and costs.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for sanctions, Docket Entry No. 81, is granted.

Dated:  New York, New York                    SO ORDERED:
            November 17, 2021

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE