```
                                                           USDC-SDNY
                                                           DOCUMENT
UNITED STATES DISTRICT COURT                               ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                              DOC#:
                                                           DATE FILED: 08/19/2022
```

SAGAX DEVELOPMENT CORP.,

                Plaintiff,

        v.

ITRUST S.A.,

                Defendant.

No. 19-CV-3386 (RA) (JW)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Sagax Development Corp. ("Sagax") commenced this action against Defendant ITrust S.A. ("ITrust"), alleging that ITrust breached its agreement to compensate Sagax for its efforts to secure investors and investments in ITrust's business.

Now before the Court is Plaintiff's motion for summary judgment, which is unopposed. For the reasons set forth below, the motion is granted.

## BACKGROUND[1]

Sagax is an advisory company that consults with and advises startup companies, principally in the technology industry. ITrust is a technology company based out of Toulouse, France. On August 24, 2015, David Ofer, the Vice President and Board Member of ITrust, contacted Luc Hardy, the President of Sagax, seeking financing advice and consulting services. 56.1 Stmt. ¶ 3. Specifically, Mr. Ofer was interested in "flipping" ITrust's business into a U.S. company and raising financing from investors in order to enter the U.S. market and grow the business in

---

[1] The Court draws the following facts from Plaintiff's Rule 56.1 Statement ("56.1 Stmt.") and supporting documents, as well as the complaint. *See Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 634 (S.D.N.Y. 2020) (considering facts from the amended complaint on an unopposed motion for summary judgment).

America. *Id.*

On October 9, 2015, Sagax and ITrust entered into an agreement, whereby "ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax securing investments into those entities" (the "Agreement"). *Id.* ¶ 5. From October of 2015 through May of 2016, Mr. Hardy began working pursuant to the Agreement, soliciting potential investors, negotiating with them and persuading them to consider investing in ITrust, introducing them to Mr. Ofer, and generally advising ITrust regarding entry into the U.S. market. *Id.* Specifically, Mr. Hardy participated in over one hundred telephone calls, sent and received hundreds of emails, and attended approximately ten in-person meetings related to his work for ITrust. *Id.* ¶¶ 6–7. As a result of Mr. Hardy's efforts, ITrust "received investments totaling approximately €1,716,000 from investors that were solicited and introduced by Sagax through Mr. Hardy." *Id.* ¶ 7. Even after this initial round of investments, Sagax continued to serve as an advisor and consultant to ITrust through the first quarter of 2017. Despite this, ITrust "refused to grant Sagax the 2.5% equity interest in ITrust's business as agreed." *Id.* ¶ 8. Indeed, ITrust failed to compensate Sagax for its services in any way.

On April 16, 2019, Sagax commenced this action by filing its complaint, asserting claims for breach of contract and unjust enrichment based on ITrust's failure to compensate Sagax under the Agreement.[2]

## PROCEDURAL HISTORY

On July 31, 2019, the Court denied ITrust's motion to dismiss the complaint based on personal jurisdiction and for failure to state a claim for breach of contract and unjust enrichment.

---

[2] Sagax initially pled a claim for unjust enrichment claim in the alternative but is no longer pursuing this claim. *See* Pl.'s Br. at n.2.

Following this ruling, the Court granted ITrust's counsel's motion to withdraw, notifying the company that it must advise the Court as to whether and when it obtained successor counsel. ITrust, however, failed to obtain new counsel. The Court provided ITrust with multiple opportunities to do so, warning that Defendant, as a corporation, was not permitted to proceed *pro se*. After receiving no response to these Orders, on December 10, 2019, Sagax moved for default judgment against ITrust. The Court subsequently scheduled a hearing for ITrust to show cause as to why default judgment should not be entered against it, and on the eve of the hearing, ITrust obtained new counsel who appeared on its behalf. In light of this appearance, the Court denied the motion for default judgment and referred the matter to Magistrate Judge Fox for all general pretrial matters.

Although now represented by new counsel, ITrust continued to fail to respond to Sagax's requests for discovery initially served on Defendant in July of 2019. *Id.* ¶ 15. Only on January 11, 2021—almost a year and a half since the requests had been served and nearly one year after new counsel filed a notice of appearance—did Sagax receive a letter from ITrust's counsel. The letter asserted that "ITrust was prohibited from participating in discovery based on the French Data Protection Act and French Law No. 68-678 of July 26, 1968 relating to the Communicating of Economic, Commercial, Industrial, Financial or Technical Documents and Information to Foreign Individuals or Legal Entities (the "French Blocking Statute")." *Id.* In this letter, ITrust stated that Sagax was required to conduct all discovery through the procedures outlined in the Hague Convention. *Id.* Sagax objected to this, and the dispute was submitted to Judge Fox, who held a hearing to discuss the matter on April 20, 2021. Judge Fox found that ITrust had waived its argument based on the French Blocking Statute, directed it to comply with discovery, and issued an Order dictating a discovery schedule. Apr. 20, 2021 Transcript of Hearing; Apr. 21, 2021

Order.

While now engaging in discovery, ITrust responded to every interrogatory it received with its same objection based on the French Blocking Statute that Judge Fox had already rejected, noting that it would only comply with discovery "by obtaining appropriate orders from courts in the relevant jurisdictions through the mechanisms set forth in the Hague Evidence Convention." 56.1 Stmt. ¶ 19 (quoting Def.'s Resp. to Pl.'s Interrog.). "As a result, ITrust did not provide a single substantive response to Sagax's interrogatories beyond identifying a few names that 'were previously disclosed through Plaintiff's own submissions.'" *Id.* (quoting Def.'s Resp. to Pl.'s Interrog.).

The parties once again submitted this dispute to Judge Fox for resolution, with Sagax requesting to file a motion for sanctions against ITrust. In the letter to Judge Fox, ITrust's counsel represented that ITrust had received "an order from the French Ministry of Justice on November 16, 2020, which prohibited it from participating in any foreign proceeding—by threat of civil and criminal sanctions—unless such discovery is carried out in accordance with diplomatic channels." *Id.* ¶ 20. This "order," however, was in fact a letter from the French Ministry of Justice responding to an inquiry from ITrust concerning disclosure of documents in connection with this lawsuit. The letter indicated that the French Blocking Statute prohibits natural persons of French nationality from, among other things, disclosing "documents or intelligence of economic, commercial, industrial, financial or technical nature, the disclosure of which may jeopardize the sovereignty, security, the basic economic interests of France or the public order." Evans Decl. Ex. 16 at 6. It thus advises ITrust to seek an order from the Court with a request "to obtain evidence for the production of the exhibits required, pursuant to the international instrument connecting France and the United States of America." *Id.* As described below, Judge Fox perceived ITrust's

characterization of this letter as an order to be a misrepresentation.

On July 16, 2021, Judge Fox denied the parties' request for a conference and directed Sagax to file its motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. Sagax's motion sought entry of an order (1) directing ITrust to pay the reasonable expenses, including attorneys' fees, that Sagax had incurred in connection with ITrust's willful refusal to comply with the Court's orders; and (2) drawing an adverse inference against ITrust so as to deem the following facts as established for purposes of this action: (i) the parties entered into an enforceable agreement whereby ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax securing investments into those entities; (ii) Sagax performed under the agreement and secured $2 million in investments for ITrust and/or its subsidiary; (iii) ITrust is required to compensate Sagax under the Agreement; (iv) ITrust failed to compensate Sagax under the Agreement; and (v) ITrust owes Sagax an amount equal to 2.5%, which is, at a minimum, $499,221.00, plus statutory interest and costs.

On November 17, 2021, Judge Fox granted Sagax's motion in full. Judge Fox found that ITrust acted in bad faith by failing to comply with his previous discovery orders, by continuing to reassert the same arguments that he had already rejected, and by "representing to the Court in opposition to the instant motion that the purported letter from the French Ministry of Justice ordered the defendant to act as well as prohibited the defendant from acting." *Sagax Dev. Corp. v. ITrust S.A.*, No. 19 Civ. 3386 (RA) (KNF), 2021 WL 5360121, at *8 (S.D.N.Y. Nov. 17, 2021).

Judge Fox concluded:

> Based on the record and under the circumstances of this case and given that the defendant concedes that it will not participate in discovery "regardless of any sanctions imposed on ITrust," the Court finds that the harshest sanction against the defendant is appropriate and necessary to satisfy the purposes of Rule 27 sanctions: (i) it will ensure that the defendant will not benefit from its own failure to comply;

5

(ii) it will serve as a specific deterrent to the defendant from continuing its disobedience of the Court's orders; and (iii) it will serve as a general deterrent effect in this case and on other litigation.

Accordingly, the Court deems the following facts established for the purposes of this action:
(1) the parties entered into an enforceable agreement whereby ITrust promised Sagax a 2.5% equity stake in ITrust and/or its subsidiary in exchange for Sagax securing investments into those entities; (2) Sagax performed under the agreement and secured $2 million in investments for ITrust and/or its subsidiary; (3) ITrust is required to compensate Sagax under the Agreement; (4) ITrust failed to compensate Sagax under the Agreement; and (5) ITrust owes Sagax an amount equal to 2.5%, which is, at a minimum, $499,221.00, plus statutory interest and costs.

*Id.* at *10.

In so ruling, Judge Fox noted that:

[T]he facts the plaintiff seeks the Court to deem established are the facts required to satisfy each of the elements of a breach of contract cause of action. In effect, granting the relief requested, *i.e.*, deeming the facts designated by the plaintiff established for the purpose of this action, would be tantamount to entering judgment against the defendant, including the amount of damages, and no adverse inference would be left for the jury to make or any other facts to be found, given the statutory interest and costs would be determined by the Clerk of Court.

*Id.*

At no time did ITrust attempt to appeal Judge Fox's rulings to this Court.

On February 14, 2021, Sagax moved for summary judgment. ITrust did not file an opposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).[3]

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To survive summary judgment, the moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). In such cases, the Court must still deny the motion if the movant does not meet his burden of production, or where the undisputed facts fail to "show that the moving party is entitled to judgment as a matter of law." *Id.* at 244.

## DISCUSSION

Plaintiff argues that this case can be decided on the basis of Judge Fox's November 17, 2021 sanctions order that deemed established each of the facts necessary to satisfy the elements of a claim for breach of contract. Because that decision had the effect of finally resolving the Plaintiff's breach of contract claim, it amounted to a dispositive ruling. *See e.g.*, *Cruz v. G-Star Inc.*, No. 17 Civ. 7685 (PGG), 2019 WL 4805765, at *7–8 (S.D.N.Y. Sept. 30, 2019). It thus must be considered, if at all, as a Report and Recommendation ("R&R"). *See Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 180 (S.D.N.Y. 2014); Moore's Federal Practice § 72.08(1) (3d ed. 2014) ("If a magistrate judge erroneously enters an order purporting to determine

a dispositive matter, a district judge reviewing the order may ignore the form of the decision and treat it as a recommendation."). When reviewing an R&R of a magistrate judge that amounts to a dispositive order, a district court must make a *de novo* determination of those portions to which objection is made, and if no objections are filed, review the report for clear error. *Andrews v. LeClaire*, 709 F. Supp. 2d 269, 271 (S.D.N.Y. 2010); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009).

As neither party has filed an objection to Judge Fox's ruling,[4] the Court would normally review it for clear error. In this case, however, it need not engage in any review of the November 17, 2021 Order because it has an independent basis on which to rule. Pending before the Court is an unopposed motion for summary judgment, supported by unopposed declarations. ITrust has not contested the instant motion, including on the grounds that it was unable to engage in discovery due to the French Blocking Statute or Judge Fox's rulings on it. Nor has it called into question any of the evidence that Plaintiff has put forth. The undisputed record on Sagax's motion thus establishes that there is no genuine issue of material fact precluding summary judgment.

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000). It is undisputed that the parties entered into a contract that entitled Sagax to a 2.5% equity stake in ITrust in exchange for Sagax's securing of investments, and that Sagax subsequently performed, ultimately securing $2 million in investments for ITrust. 56.1 Stmt. ¶¶ 5–7; Compl. Ex. A. It is further uncontested

---

[4] While the Second Circuit has recognized a preference for magistrate judges to explicitly state time limits for objections, which Judge Fox did not, "the absence of such clear notice to the parties does not preclude application of the waiver rule." *E.E.O.C. v. N.Y. Foundling Hosp., Inc.*, No. 90 Civ. 1290 (JMC), 1991 WL 120460, at *1 (S.D.N.Y. June 26, 1991).

that ITrust has failed to compensate Sagax under the agreement, owing Sagax 2.5% in equity, which is equal to at least $499,221.00.  56.1 Stmt. ¶ 8.  Accordingly, Plaintiff is entitled to judgment as a matter of law on its claim for breach of contract.

## CONCLUSION

For the foregoing reasons, Sagax's motion for summary judgment is granted.  Sagax is entitled to a judgment in the amount of $499,221.00 plus statutory interest and costs.  By no later than August 26, 2022, Sagax shall file a proposed order including the judgment award and the amount of costs.  The Clerk of Court is directed to terminate the motion pending at Docket 93.

SO ORDERED.

Dated:   August 19, 2022
         New York, New York

Ronnie Abrams
United States District Judge